Josh Auxier & Coleen Auxier
19210 3rd Ave S
Des Moines, WA 98148
Tel. # (206) 551-1786
e-mail: joshandcoleen@gmail.com

FILED ___ ENTERED
LODGED ___ RECEIVED

FEB 2 1 2012    LK

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

12-CV-00288-CMP

# UNITED STATES DISTRICT COURT,
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

Josh Auxier & Coleen Auxier;

Plaintiff(s),

vs.

Frederick J. Hanna & Associates, P.C.; Suttell
& Hammer, P.S.;

Defendants.

FIA CARD SERVICES, N.A.;

Co-Defendant

No. **C12-0288** MJP

COMPLAINT FOR:
(1) Violation of Fair Debt Collections
    Practices Act 15 U.S.C 1692 et. seq.
    (FDCPA)
(2) Violation of Fair Credit Reporting Act
    15 U.S.C 1681 et. seq. (FCRA)

Josh Auxier & Coleen Auxier, (hereinafter together "Auxiers") separately and together

respectfully state their claims upon which relief can be granted against the respective

Defendant(s), Frederick J. Hanna & Associates, P.C. (hereinafter "Fred Hanna"); Suttell &

**Complaint**                    **- Page 1-**

1  Hammer, P.S. (hereinafter "Suttell Hammer"); and Co-Defendant FIA Card Services, N.A.

2  (hereinafter "FIA"); separately and together as follows:

3  **STATEMENT OF CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST**
   **DEFENDANT FRED HANNA AND SUTTELL HAMMER.**

4  

5       Defendant Fred Hanna and Defendant Suttell Hammer are 3rd party debt collector law

6  firms, and as such are governed under the law by The Fair Debt Collection Practice Act 15

7  USC Section §1692 *et seq.* (hereinafter "FDCPA"). In addition, as a party accessing the

8  private financial information and credit file of Plaintiff, Defendant Fred Hanna is governed by

9  The Fair Credit Reporting Act 15 USC Section §1681, *et seq.* (hereinafter "FCRA").  The

10 State of Washington abides by and adheres to these laws thus establishing the jurisdiction of

11 this honorable court. The Auxiers deny ever having any contractual agreement for credit,

   loans, or services relationship with Defendant(s).

12      Even if the Auxiers did have such an agreement, which the Auxiers deny, the alleged

13 debt is not in question here. What is relevant here, is how it was or was not validated and the

14 wrongful actions of Defendants in an attempt to collect the Debt[1]. In addition, the accessing of

15 the Auxiers' private financial information and credit file violated the civil rights of the Auxiers

16 and the law as outlined in the FDCPA, 15 USC §1692, *et seq.* and the FCRA 15 USC §1681,

17 *et seq.*

18 //

19 //

20 ───────────────────────

21      [1] See Spears v. Brennan, 745 NE 2d 862 - Ind: Court of Appeals 2001 ("We note that a FDCPA claim
   "has nothing to do with whether the underlying debt is valid. An FDCPA claim concerns the method of collecting
   the debt. It does not arise out of the transaction creating the debt."; Baker v. GC Services Corp., 677 F. 2d 775 -
22 Court of Appeals, 9th Circuit 1982 ("A] debtor has standing to complain of violations of the **[FDCPA]**,
   regardless of whether a valid debt exists")

**Complaint**                          **- Page 2-**

**STATEMENT OF CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAIN CO-DEFENDANT FIA.**

The instant case is in reference to the collection activities and reporting to Plaintiff's consumer credit report of a disputed account that was allegedly held or assumed by Co-Defendant FIA. The Law of Agency applies in this matter. Co-Defendant FIA purports to be a credit lender and as such is governed under the law by the FCRA 15 U.S.C. §1681, *et seq.* and has accessed and furnished information to the Auxiers' private financial data and credit files. The State of Washington abides by and adheres to this law thus establishing the jurisdiction of this honorable court. The Auxiers do not recall having any contractual agreement for credit, loans, or services relationship with the Co-Defendant FIA.

Even if the Plaintiff did have such an agreement, the alleged debt is not in question here. What is relevant here, is how it was not verified and the wrongful actions and collections activities of Co-Defendant FIA in accessing and furnishing information to the Auxiers' credit reports and financial information without a permissible purpose, thereby violating the civil rights of the Auxiers and the law as outlined in The Fair Credit Reporting Act 15 USC §1681, *et seq.*

## I.  JURISDICTION, VENUE AND PARTIES,

**1.1 Jurisdiction and Venue.**

Jurisdiction in this case is based on the nature of United States violations claimed in the pleadings below pursuant to 28 USC §1331. The Auxiers are residents of Washington State, and some of the defendants are residents of other states, as stated in the descriptions of the parties in ¶1.2 - ¶1.6 of this Complaint. Venue in this matter is properly set in the U.S. District

**Complaint**                          **- Page 3-**

Court, Western District of Washington pursuant to 28 USC §1391(a) (2) based on facts pled in ¶1.2 - ¶1.6 below.

**1.2 <u>Coleen Auxier, Plaintiff.</u>**

Coleen Auxier (hereinafter "Plaintiff") at all times hereinafter mentioned and continues to be a Washington State Resident whose primary residence is located in King County, Washington. Plaintiff is subject to the jurisdiction and venue of this court by her residency, that the account in question is listed on her credit profile, and that she received correspondence from Defendants Fred Hanna and Suttell Hammer in their activities as a Debt Collectors as defined in the FDCPA.

**1.3 <u>Josh Auxier, Co-Plaintiff.</u>**

Josh Auxier (hereinafter "Co-Plaintiff") at all times hereinafter mentioned and continues to be a Washington State Resident whose primary residence is located in King County, Washington. Co-Plaintiff is subject to the jurisdiction and venue of this court by his residency, and that the account in question is listed on his credit profile and that he receives collection calls from Defendants Fred Hanna and Suttell Hammer in their activities as a Debt Collector as defined in the FDCPA.

**1.4 <u>Frederick J. Hanna & Associates, P.C., Defendant</u>**

Frederick J. Hanna & Associates, P.C.; (hereinafter "Fred Hanna") is a Georgia Professional Corporation, not licensed to do business in Washington State with its primary office location in Marietta, Georgia.  Fred Hanna at all times relevant to this matter was acting as a 3rd party debt collector law firm, as such is governed under the law specifically the FDCPA, FCRA and the WA Collection Agency Act. Fred Hanna is subject to the jurisdiction

**Complaint** - Page 4-

and venue of this court by its residency and by performing the activities of a Collection

Agency and Debt Collector as defined in the WA Collection Agency Act, FDCPA, and FCRA.

**1.5 Suttell & Hammer, P.S., Defendant**

Suttell & Hammer, P.S.; (hereinafter "Suttell Hammer") is a law firm and incorporated

as a Professional Service Corporation, in Washington State with its primary office location in

Mercer Island, WA.  Suttell Hammer at all times relevant to this matter was acting as a 3rd

party debt collector law firm, as such is governed under the FDCPA[2]. Suttell Hammer is

subject to the jurisdiction and venue of this court by its residency and by performing the

activities of a Debt Collector as defined in the FDCPA.

**1.6 FIA Card Services, N.A., Co-Defendant**

FIA Card Services, N.A. (hereinafter "FIA") is a national bank doing business in King

County, Washington, which was apparently incorporated in Newark, DE.  FIA reputedly

claims to be the Creditor for the alleged debt in this matter.  FIA is subject to the jurisdiction

and venue of this court by its residency and by performing the activities of a Creditor as

defined in the FDCPA and in the FCRA.

## II.     BACKGROUND FACTS AND HISTORY.

**2.1 Auxiers suspect they have been victim of Mail & Identify Theft.**

Auxiers prior to 2007 both had excellent credit standing and were in a stable financial

position. With the economic collapse and the extraordinary decline in income for a significant

section of the American population, the Auxiers' financial and credit standing has been

---

[2] See Heintz v. Jenkins, 514 US 291 - Supreme Court 1995

**Complaint**                              **- Page 5-**

significantly impacted partly due to factors involving the theft of mail in their neighborhood apparently leading to the illegal use of their private financial information.

In Auxiers' opinion; as incomes through-out the country sharply declined and more and more US citizens lost their jobs it was only a matter of time before financial crimes, such as mail and identity theft began to increase. Unfortunately, it appears to the Auxiers' that they have been victims of these types of devious activities.

It began in or around the spring or summer of 2007 that unknown parties began receiving mail at Auxiers' home. Then random unknown charges and accounts began to appear on some of Auxiers' credit profiles. The Auxiers' did not become aware of this until they began to receive dunning letters from various 3rd Party Debt Collectors. It is unknown to Auxiers' how long this had been occurring and unfortunately the Auxiers' continue to uncover additional inaccuracies in their credit reports. In short, somehow the Auxiers' financial information has apparently made it out into the world of crooked characters without their knowledge.

Over the past many months Auxiers have been forced to investigate and attempt to learn the laws, rights and proper procedures to identify what is a valid debt of theirs and demand accurate accounting of those debts so that they are not harmed further during their efforts to rebuild from the unscrupulous parties adding to the difficulties of the economic disaster that has decimated the world's financial systems.

**2.2 Auxiers' received several phone calls & dunning letters from Defendant Fred Hanna's in violation of FDCPA, RCW 19.16, RCW 19.86.**

Defendant Fred Hanna's unfair and deceptive acts in violation of the FDCPA, RCW 19.16 et. seq and 19.86 et. seq. continued for months and included but was not limited to

**Complaint**                                    **- Page 6-**

1   causing Auxiers' telephone to ring repeatedly or continuously with intent to harass, annoy or

2   abuse Auxiers[3]. These calls occurred at all hours of the day and night, which were known or

3   should have been known to be inconvenient for Auxiers, including before 8am and after 9pm[4].

4        Auxiers received multiple dunning letters from both Defendant Fred Hanna that made

5   false statements and threats that Defendant Fred Hanna would sue Auxiers' if they didn't pay

6   the debt in full. These false statements and threats were in violation of the FDCPA § 1692 as

7   the dunning letters overshadows Auxiers' rights[5], made false, deceptive, or misleading

8   representation[6] it appears obvious to the Auxiers that Defendant Fred Hanna was aware of the

9   requirements of the statute and simply willfully chose not to comply with those requirements

    as will be described in detail below.

10  **2.3 The Auxiers mailed a Validation Letter to Defendant Fred Hanna on September 2nd,**
11  **2010.**

12        Shortly after the phone call and letter received with an address to reply to the Auxiers

13  prepared and sent a Validation Letter as described in the FDCPA § 809(b) Validating Debts:

14        *"If the consumer notifies the debt collector in writing within the thirty-day*

15        *period described in subsection (a) of this section that the debt, or any portion thereof,*

16        *is disputed, or that the consumer requests the name and address of the original*

---

17  [3] FDCPA §1692d(5)

    [4] FDCPA §1692c(a)(1)

18  [5] See Swanson v. Southern Oregon Credit Service, Inc., 869 F. 2d 1222 - Court of Appeals, 9th Circuit 1988
    ("*See id.,* 1977 U.S.Code Cong. & Admin.News at 1702. In this circuit, the impact of language alleged to violate
19  section 1692g is judged under the "least sophisticated debtor" standard. *Baker v. G.C. Services Corp., 677 F.2d*
    *775, 778 (9th Cir.1982) (Baker)*. ... to be effective, the notice must not be overshadowed or contradicted by other
    messages or notices appearing in the initial communication from the collection agency. E.g., Thomas v. National
20  Business Assistants, Inc., No. N82-469 (D.Conn. Oct. 5, 1984) ("inconspicuous and grossly overshadowed"
    notice did "not properly notify recipients of their validation of debt rights"); Ost v. Collection Bureau, Inc., 493
21  F.Supp. 701, 703 (D.N.D.1980) (Ost) (communication must not be designed to "evade the spirit of the notice
    statute, and mislead the debtor into disregarding the notice").

22  [6] FDCPA §1692e

    **Complaint**                    **- Page 7-**

*creditor, the debt collector shall cease collection of the debt, or any disputed portion*

*thereof, until the debt collector obtains verification of the debt or a copy of a judgment,*

*or the name and address of the original creditor, and a copy of such verification or*

*judgment, or name and address of the original creditor, is mailed to the consumer by*

*the debt collector. Collection activities and communications that do not otherwise*

*violate this subchapter may continue during the 30-day period referred to in subsection*

*(a) unless the consumer has notified the debt collector in writing that the debt, or any*

*portion of the debt, is disputed or that the consumer requests the name and address of*

*the original creditor. Any collection activities and communication during the 30-day*

*period may not overshadow or be inconsistent with the disclosure of the consumer's*

*right to dispute the debt or request the name and address of the original creditor."*

The letters were sent via Certified First Class US Mail Return Receipt requested. Proof of Delivery is in Auxiers' possession. Defendant Fred Hanna accepted receipt of this Letter on September 7th, 2010.

No response or validation was ever received from Defendant Fred Hanna.

### 2.4 Auxiers' received a dunning letter from Defendant Suttell Hammer dated September 20th, 2010

Plaintiff received a dunning letter from Defendant Suttell Hammer dated September 20th, 2010 that stated the following:

*"If you fail to dispute the debt or any portion thereof within 30 days after your receipt of this letter we will assume the debt is valid.*

*If you notify this office in writing within 30 days after your receipt of this letter that the debt or any portion thereof is disputed, our offices will obtain verification of*

**Complaint**                                          **- Page 8-**

*the debt and mail such verification to you. Upon your written request within 30 days,*

*we will provide you the name and address of the original creditor if different from the*

*current creditor.*

  *This communication is from a debt collector. This communication is an attempt*

*to collect a debt and any information obtained will be used for that purpose."*

Similar to Fred Hanna this statement is practically verbatim the disclosure from the FDCPA it

appears obvious to the Auxiers that Defendant Suttell Hammer was aware of the requirements

of the statute and simply willfully chose not to comply with those requirements as will be

described in detail below.

## 2.5 The Auxiers mailed a Validation Letter to Defendant Suttell Hammer on October 9th, 2010.

  Shortly after receiving the dunning letter described in ¶ 2.2 above the Auxiers prepared

a Validation Letter as described in the FDCPA § 809(b) Validating Debts:

  *"If the consumer notifies the debt collector in writing within the thirty-day*

*period described in subsection (a) of this section that the debt, or any portion thereof,*

*is disputed, or that the consumer requests the name and address of the original*

*creditor, the debt collector shall cease collection of the debt, or any disputed portion*

*thereof, until the debt collector obtains verification of the debt or a copy of a judgment,*

*or the name and address of the original creditor, and a copy of such verification or*

*judgment, or name and address of the original creditor, is mailed to the consumer by*

*the debt collector. Collection activities and communications that do not otherwise*

*violate this subchapter may continue during the 30-day period referred to in subsection*

*(a) unless the consumer has notified the debt collector in writing that the debt, or any*

**Complaint**       **- Page 9-**

*portion of the debt, is disputed or that the consumer requests the name and address of*

*the original creditor. Any collection activities and communication during the 30-day*

*period may not overshadow or be inconsistent with the disclosure of the consumer's*

*right to dispute the debt or request the name and address of the original creditor."*

A copy of the dispute and validation demand is attached, marked **Exhibit 1** and

incorporated herein by reference as if fully set forth here. ("Dispute and Validation Letter")

The letter was sent via Certified First Class US Mail # 7008 3230 0000 6790 1549 Return

Receipt requested. Defendant Suttell Hammer accepted receipt of this Letter on October 13th,

2010.

Suttell Hammer did not supply any proof of an account and ledger to provide

validation of the debt or amounts they were attempting to collect.

**2.6 The Auxiers obtained a copy of their Credit Reports on January 27th, 2011.**

The Auxiers obtained a copy of their Credit Reports and found that on the report for Coleen

received from TransUnion – No account payable to Fred Hanna, Suttell Hammer, or FIA exist

however the following parties accessed Coleen's report without a permissible purpose as

defined in the FCRA.

1. Defendant FIA made an inquiry in February and June 2010

2. Defendant Fred Hanna made an inquiry in August 2010

**2.7 Defendant Suttell Hammer continued acting as a Debt Collector in direct violation of the FDCPA.**

Even though Defendant Suttell Hammer failed to properly validate the Debt after its

receipt of Plaintiff Dispute and Validation Letter on October 13th, 2010 it continued collection

activities in violation of the Act. On April 17th, 2011 Plaintiff received an unfiled Summons

**Complaint**                                   **- Page 10-**

1  and Complaint again alleging that Plaintiff owed a Debt and as a Debt Collector Defendant

2  Suttell Hammer was attempting to collect that debt on behalf of Defendant FIA.

3  **2.8 Plaintiff sent a 2nd Dispute and Demand to File which Suttell Hammer Received on April 29th, 2011 in Response to the Summons & Complaint invoking Auxiers right to have complaint filed in Court.**

4

5  Shortly after Plaintiffs were served with the unsigned and unfiled complaint &

6  summons the Auxiers in response caused to be served upon Defendant Suttell Hammer a

7  Demand that the action be filed in Court along with a 2nd Dispute and Validation Letter. A

8  copy of this Demand to File and Dispute is attached, marked **Exhibit 2** and incorporated

9  herein by reference as if fully set forth here. ("Dispute & Demand Letter")

10  **2.9 Defendants Failed to Validate Account or Timely File their Complaint in Court after 2nd Dispute and Validation Request**

11

12  Neither Defendant Suttell Hammer nor its alleged client Defendant FIA responded to

13  Auxiers 2nd Dispute and Demand Letter or filed a complaint in a timely manner after their

14  receipt of Plaintiff's demand which occurred on April 29th, 2011 as can be seen by the stamp

15  stating "RCVD April 29" on Plaintiff's **Exhibit 2**.

16  **2.10 The Auxiers continued to check King County Superior courts for filing of the lawsuit as demanded in the 2nd Dispute and Validation Letter.**

17  Due to Plaintiff research Plaintiff has become aware that one of the unfair and

18  deceptive tactics used by Suttell Hammer is to not file a complaint for several months, as such

19  Plaintiff continued to check King County Superior Court for filing of the lawsuit. On January

20  10th, 2011 over 5 months later Defendant Suttell Hammer did file the complaint in King

21  County Superior Court. No additional notice was provided to Plaintiff.

22

**Complaint**                          **- Page 11-**

**2.11 The Auxiers filed a Motion to Dismiss in the King County Superior Court Case # 11-2-32066-9 KNT**

Upon being notified that a lawsuit had been filed against them the Auxiers filed a Motion to Dismiss in the King County Superior Court Case #11-2-32066-9. Unfortunately, even though the Auxiers, acting in a pro se capacity, are diligently attempting to become familiar with judicial rules and procedures, this motion was denied w/o prejudice due to procedural error Plaintiff's Motion to Dismiss was denied w/o prejudice.

### III. Plaintiffs' Claims.

**3.1 The Auxiers Claims of Violation of FDCPA 15 U.S.C 1692 et. seq. against Defendant Fred Hanna**

**3.1.1    The Auxiers Reallege Paragraphs 1.1 through 2.11 of Complaint.**

The Auxiers reallege Paragraphs 1.1 through 2.11, including all subparagraphs thereof, as if fully and completely set forth here.

**3.1.2    The Auxiers Claim Defendant Fred Hanna has violated the FDCPA §1692e §807 - False and Misleading Information**

The Auxiers claim Defendant Fred Hanna violated FDCPA §1692e § 807 False and Misleading information when in the initial phone communication it failed to disclose the call was "from a debt collector and any information obtained would be used for that purpose" as required by the statute:

§807. False or misleading representations [15 USC 1692e]

*(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose...* "

**Complaint**                                   **- Page 12-**

Defendant Fred Hanna did not comply with the law when contacting the Auxiers by failing to inform the Auxiers of their rights.

Wherefore, Plaintiff claims damages and demands judgment in the amount of $1,000.

### 3.1.3   Defendant Fred Hanna has violated the FDCPA §809 15 U.S.C. 1692g by failing to properly validate the Debt it was attempting to Collect.

Plaintiff claims that Defendant Fred Hanna has violated FDCPA §809 15 U.S.C. 1692g *et seq.* by failing to provide proof of the alleged debt as required by the statute when requested by the Auxiers' validation letter referenced in ¶ 2.3 above.

> *(b) If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.*

It has been found by many courts that to comply with the statute and protect the consumer's rights, validation requires presentment of the account and general ledger statement signed and dated by the party responsible for maintaining the account.[7]

Wherefore, Plaintiffs claim damages and demands judgment in the amount of $1,000.

//

---

[7] *Pacific Concrete F.C.U, v, Kauanoe,* 62 Haw. 334, 614 P.2d 936 (1980); GE Cap/fa/ Hawaii, Inc. v. Yonenaka, 25 P.3d 807, 96 Hawaii 32 (Hawaii App 2001); *Fooks v. Norwich Housing Authority,* 28 Conn. L. Rptr. 371, (Conn. Super.2000); *Town of Brookfield v. Candlewood Shores Estates, Inc.,* 513 A.2d 1218, 201 Conn. 1 (1986); and *Solaon v. Godbole,* 163 Ill. App. 3d 845, 114 Ill. Dec. 890, 515 N.E. 2d 1045 (3rd Dist 1987).

**Complaint**                                    **- Page 13-**

### 3.1.4   The Auxiers claim Defendant Fred Hanna Violated FDCPA by threatening to take action which cannot legally be taken.

Plaintiff claims that when Defendant Fred Hanna, threatened to SUE the Auxiers if they did not pay the balance in full as described in ¶ 2.2 above it violated the FDCPA § 807. False or misleading representations

*A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:*

> *(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.*

This is in violation of the Auxiers' civil right to dispute the debt and have it properly validated.

Wherefore, Plaintiff claims damages and demands judgment in the amount of $1,000.

### 3.1.5   Plaintiff claims Defendant FCRA violated §604 FCRA 15 U.S.C. § 1681b Permissible Purposes of Consumer Reports

Plaintiff claims that Defendant Fred Hanna violated §604 FCRA 15 U.S.C. § 1681b as without proper validation of the debt Defendant Fred Hanna had no "permissible purpose" to inquire & pull Plaintiff's credit reports as further described above in ¶ 2.6. None of the Defendants provided proof of any alleged debt owed to them therefore the access to Plaintiff's private financial information and credit file is in direct violation of the FCRA. Furthermore, there has been no authorization by the Plaintiff to pull the report to any of the Defendants. Wherefore, Plaintiff claims damages and demands judgment in the amount of $1,000.

//

**Complaint**                                           **- Page 14-**

### 3.1.6   The Auxiers claim Damages against Defendant Fred Hannah for violation of FDCPA 15 U.S.C. §1692 et. seq. and FCRA 15 U.S.C. §1681 et. seq.

WHEREFORE, Defendants Fred Hanna has violated the FCRA and the FDCPA, The Auxiers claim damages and demand judgment in the amount of $4,000.00, plus an award for all costs and expenses incurred in presenting this claim along with punitive damages in the amount of $25,000 or as allowed by the court.

### 3.2 The Auxiers Claims of Violation of FDCPA 15 U.S.C 1692 et. seq. against Defendant Suttell Hammer.

### 3.2.1   The Auxiers Reallege Paragraphs 1.1 through 2.11 of Complaint.

The Auxiers reallege Paragraphs 1.1 through 2.11, including all subparagraphs thereof, as if fully and completely set forth here.

### 3.2.2   Defendant Suttell Hammer has violated the FDCPA §809 15 U.S.C. 1692g by failing to properly validate the Debt it was attempting to Collect.

Plaintiff claims that Defendant Suttell Hammer has violated FDCPA §809 15 U.S.C. 1692g *et seq.* on two separate occasions by failing to provide proof of the alleged debt as required by the statute when requested by the Auxiers' Dispute & Validation Letter referenced in ¶ 2.5 above and then again after being served with Auxiers' Demand and Dispute Letter referenced in ¶ 2.9 above.

> *(b) If the consumer notifies the debt collector in writing within the thirty-day period*
>
> *described in subsection (a) that the debt, or any portion thereof, is disputed, or that the*
>
> *consumer requests the name and address of the original creditor, the debt collector*
>
> *shall cease collection of the debt, or any disputed portion thereof, until the debt*
>
> *collector obtains verification of the debt or any copy of a judgment, or the name and*
>
> *address of the original creditor, and a copy of such verification or judgment, or name*
>
> *and address of the original creditor, is mailed to the consumer by the debt collector.*

**Complaint**                                    **- Page 15-**

It has been found by many courts that to comply with the statute and protect the consumer's rights, validation requires presentment of the account and general ledger statement signed and dated by the party responsible for maintaining the account.

Wherefore, Plaintiffs claim damages and demands judgment in the amount of $2,000.

**3.2.3**   **The Auxiers claim Damages against Defendant Suttell Hammer for violation of FDCPA 15 U.S.C. §1692 et. seq.**

WHEREFORE, Defendants Suttell Hammer has violated the FDCPA, The Auxiers claim damages and demand judgment in the amount of $2,000.00, plus an award for all costs and expenses incurred in presenting this claim along with punitive damages in the amount of $25,000 or as allowed by the court.

**3.3 The Auxiers Reallege ¶1.1 through ¶2.11 of Complaint.**

**3.3.1**   The Auxiers reallege ¶1.1 through ¶2.11, including all subparagraphs thereof, as if fully and completely set forth here.

**3.3.2**   **Plaintiff claims Defendant FIA FCRA violated §604 FCRA 15 U.S.C. § 1681b Permissible Purposes of Consumer Reports**

As described above in ¶ 2.6 above Auxiers requested copies of their credit reports on January 27th, 2011. Auxiers were alerted to the possibility of inappropriate accessing of their financial information and credit reports when they were contacted by Defendant Fred Hanna as described in ¶ 2.2. Upon inspection of the reports the Auxiers observed that Co-Defendant FIA Defendant FIA made an inquiry in February 2010 and again in June 2010.

The Auxiers contacted Defendant Fred Hanna and Defendant Suttell Hammer to have the debt validated and obtain verified accounting, as described in ¶2.3, ¶2.5, & ¶2.9 above. Defendant Suttell Hammer is allegedly Co-Defendant FIA's Attorney & Agent.

//

//

**Complaint**                              **- Page 16-**

### 3.3.3. The Auxiers claim Co-Defendant FIA Willfully Chose to Act in Non-Compliance with the FCRA 15 U.S.C § 1681n et. seq.

Plaintiff claims Co-Defendant FIA chose to willfully act in non-compliance with the requirements stated in the FCRA 15 U.S.C § 1681n et. seq.

*The FCRA § 616. Civil liability for willful noncompliance: (a) In general. Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of (1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000, (2) such amount of punitive damages as the court may allow; and (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.*

Auxiers' private credit file and financial information have been violated and Auxiers have been denied credit at reasonable rates because of the willful noncompliance including the multiple inquiries of Defendant FIA without a permissible purpose.

*According to the FCRA§ 617 Civil liability for negligent noncompliance 15 U.S.C. § 1681o (a) In general. Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of (1) any actual damages sustained by the consumer as a result of the failure; (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.*

**Complaint**                              **- Page 17-**

Co-Defendant FIA has never validated the account or mailed/provided such validation to the Plaintiff.

Wherefore, Plaintiff requests judgment against Co-Defendant FIA for punitive damages in the amount of $25,000 plus costs and fees or as allowed by the court.

### 3.3.3  Plaintiff claims Damages against Co-Defendant FIA for violation of FCRA 15 U.S.C. §1681 *et. seq.*

WHEREFORE, the Co-Defendant FIA has violated the FCRA. Plaintiff demands Judgment in the amount of $2,000, plus all costs of this action along with punitive damages in the amount of $25,000 or as allowed by the court.

## IV. REQUESTS FOR RELIEF.

**Wherefore, Plaintiff having stated its claims for relief, requests relief against Defendant(s) as follows:**

**4.1** Damages and Judgment against Defendant Fred Hanna in the amount of $4,000 for violations described above in ¶3.1.2 - ¶3.1.6.

**4.2** Damages and demand judgment against Defendant Fred Hanna for punitive damages in the amount of $25,000 or as allowed by the court.

**4.3** Damages and Judgment against Defendant Suttell Hammer in the amount of $2,000 for violations described above in ¶3.2.2.

**4.4** Damages and demand judgment against Defendant Suttell Hammer for punitive damages in the amount of $25,000 or as allowed by the court.

**4.5** Damages and Judgment against Co-Defendant FIA in the amount of $2,000 plus for violations described above in ¶3.3.2 - ¶3.3.4

**4.6** Punitive Damages and Judgment against Co-Defendant FIA in the amount of $25,000.

**Complaint**                          **- Page 18-**

**4.7** Actual Damages and Judgment against all Defendant(s) for costs and fees incurred by

Plaintiffs.

**4.8** And such other relief as the Court deems just and proper.

Dated February 19, 2012

Josh Auxier & Coleen Auxier, Plaintiffs

19210 3rd Ave S
Des Moines, WA 98148
Tel. # (206) 551-1786
E-mail: joshandcoleen@gmail.com

**Complaint**                    **- Page 19-**

C12-0288mp

EXHIBIT "1"

October 7th, 2010

Coleen Auxier
19210 3rd Ave. S.
Des Moines, WA 98148
(206) 242-3100

Suttell & Hammer, P.S.
PO Box C-90006
Bellevue, WA 98009

To Whom It May Concern:

I recently received a letter from you indicating I owe you some money. I've never heard of Suttell & Hammer, P.S. before. I have never bought any merchandise whatsoever from your firm nor to the best of my knowledge and belief have they ever performed any service for me of any kind whatsoever.

I would like to resolve this matter at the earliest possible time, however due to the possibility of error or fraud in this matter, I must insist that you prove that I owe you this purported debt and why.

In order to prove the debt, I must have a signed and sworn statement before notary public under penalty of perjury by a person having firsthand knowledge of the indebtedness and stating that the reported indebtedness was a legal indebtedness under all applicable state and federal laws, was not subsequently disputed as a result of returned, faulty, or recalled consumer products, and furthermore swearing that this purported debt is not now nor ever has been part of any tax write off scheme nor insurance claim. Please be advised that I am requesting validation and competent evidence that I had some contractual obligation sans consumer protection encumbrance whereby I incurred the original claims associated with this purported debt.

Please be advised that under the Fair Debt Collection Practices Act, I am authorized to demand that you not contact me by telephone nor at my place of employment by any means whatsoever. If you wish to communicate with me, you may do so only by U.S. mail and only at my place of residence.

Your failure to provide such information as I request in a timely manner may constitute prima facie evidence of intent to defraud, intimidate or coerce me and to deprive me of my civil rights.

Please be advised that any contact made by your firm with any 3rd party firm or entity regarding this issue absent compliance with each and every part of this demand for validation may constitute violation of the FDCPA and the FCRA and may constitute grounds for civil or criminal action or complaints being filed against you. I do hope that you can understand and that we can settle this matter in an amicable fashion at the earliest possible moment.

Sincerely,

*EXHIBIT "2"*    C12-0288 MJP

April 27th, 2011

RECEIVED
APR 26 2011
BLACK & YUND

Coleen Auxier
19210 3rd Ave. S.
Des Moines, WA 98148
(206) 242-3100

Suttell & Hammer, P.S.
PO Box C-90006
Bellevue, WA 98009
Re: FIA Card Services, N.A. v. Coleen Auxier

To Whom It May Concern:

I recently received a letter from you indicating I owed some money. I have never bought any merchandise whatsoever from your firm or your alleged client nor do I recall to the best of my knowledge and belief have they ever performed any service for me of any kind whatsoever.

I would like to resolve this matter at the earliest possible time, however due to the possibility of error or fraud in this matter; I must insist that you prove that I owe you this purported debt and why. In order to prove the debt, I must have a signed and sworn statement before notary public under penalty of perjury by a person having firsthand knowledge of the indebtedness and stating that the reported indebtedness was a legal indebtedness under all applicable state and federal laws, was not subsequently disputed as a result of returned, faulty, or recalled consumer products, and furthermore swearing that this purported debt is not now nor ever has been part of any, pooling agreements, credit-swap agreements, tax write off scheme nor insurance claim. Please be advised that I am requesting validation and competent evidence that I had some contractual obligation sans consumer protection encumbrance whereby I incurred the original claims associated with this purported debt.

Please be advised that under the Fair Debt Collection Practices Act, I am authorized to demand that you not contact me by telephone or at my place of employment by any means whatsoever. If you wish to communicate with me, you may do so only by U.S. mail and only at my place of residence.

█████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
validation of debt in accordance with all applicable state and federal laws that you file your complaint with the court.

Your failure to provide the above requested information as I previously requested in a timely manner may constitute prima facie evidence of intent to defraud, intimidate or coerce me and to deprive me of my civil rights.

Please be advised that any contact made by your firm with any 3rd party firm or entity regarding this issue absent compliance with each and every part of this demand for validation may constitute violation of the FDCPA and the FCRA and may constitute grounds for civil or criminal action or complaints being filed against you. I do hope that you can understand and that we can settle this matter in an amicable fashion at the earliest possible moment.

Sincerely,

Coleen Auxier